# UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DONNA M. TRUSKY, AHSA JEFFRIES,
GAYNELL COLE on behalf of themselves
and all others similarly situated,

                Plaintiff,

vs.

GENERAL MOTORS COMPANY

                Defendant.

Case No. 2:11-cv-12815-SFC-LJM

Honorable Sean F. Cox

---

David H. Fink (P28235)
Darryl Bressack (P67820)
Fink + Associates Law
100 West Long Lake Rd., Suite 111
Bloomfield Hills, MI  48304
(248) 971-2500
dfink@finkandassociateslaw.com

Marc H. Edelson
Edelson & Associates, LLC
45 West Court Street
Doylestown, PA  18901
(215) 230-8043
medelson@edelson-law.com

Jeffrey L. Kodroff
John A. Macoretta
Spector, Roseman Kodroff & Willis, PC
1818 Market Street
Philadelphia, PA  19103
(215) 496-06611
jkodroff@srkw-law.com
jmacoretta@srkw-law.com

Attorneys for Plaintiffs

Michael P. Cooney (P39405)
Benjamin W. Jeffers (P57161)
Attorneys for Defendant
Dykema Gossett PLLC
400 Renaissance Center
Detroit, MI 48243
(313) 568-5340
bjeffers@dykema.com
mcooney@dykema.com

---

## DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT BASED ON LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

Defendant, General Motors Company ("New GM") moves for dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Plaintiffs assert claims against New GM relating to vehicles manufactured and sold by Motors Liquidation Company f/k/a General Motors Corporation ("Old GM") prior to Old GM's bankruptcy. Like the initial Complaint, the Amended Complaint purports to be based on a responsibility New GM assumed from Old GM to administer certain express, limited warranties subject to their explicit terms and limitations. However, the claims asserted and the relief sought by Plaintiffs are unambiguously outside the scope of the warranty terms and are premised on conduct of Old GM. They therefore constitute a violation of the Order of the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") pursuant to which New GM acquired its assets and assumed specific liabilities only. The adjudication of that issue is within the exclusive jurisdiction of the Bankruptcy Court. The Amended Complaint did not, and cannot, fix this threshold jurisdictional problem, which was in the initial Complaint too. The Amended Complaint should be dismissed without prejudice for this reason alone.

Alternatively, if an attempt is made to reform the Amended Complaint by disregarding claims and allegations that implicate Bankruptcy Court jurisdiction (such that it is interpreted as a prayer for repairs within the scope of the assumed express warranty covering Plaintiffs' vehicles), the Amended Complaint is subject to dismissal because it fails to state a claim under that warranty.

As support for its Motion, New GM relies on Fed. R. Civ. P. 12(b) and the facts and law in the attached Brief.

Counsel for Defendant sought concurrence from Plaintiffs' counsel pursuant to L.R. 7.1 but concurrence was not forthcoming.

DYKEMA GOSSETT PLLC


By: s/ Benjamin W. Jeffers
    Benjamin W. Jeffers (P57161)
    Michael P. Cooney (P39405)
    Attorneys for Defendant
    Dykema Gossett PLLC
    400 Renaissance Center
    Detroit, MI 48243
    (313) 568-5340
    bjeffers@dykema.com
    mcooney@dykema.com

Dated: September 27, 2011

**UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DONNA M. TRUSKY, AHSA JEFFRIES,
GAYNELL COLE on behalf of themselves
and all others similarly situated,

       Case No. 2:11-cv-12815-SFC-LJM

       Plaintiff,

       Honorable Sean F. Cox

vs.

GENERAL MOTORS COMPANY

       Defendant.

---

David H. Fink (P28235)
Darryl Bressack (P67820)
Fink + Associates Law
100 West Long Lake Rd., Suite 111
Bloomfield Hills, MI 48304
(248) 971-2500
dfink@finkandassociateslaw.com

Marc H. Edelson
Edelson & Associates, LLC
45 West Court Street
Doylestown, PA 18901
(215) 230-8043
medelson@edelson-law.com

Jeffrey L. Kodroff
John A. Macoretta
Spector, Roseman Kodroff & Willis, PC
1818 Market Street
Philadelphia, PA 19103
(215) 496-06611
jkodroff@srkw-law.com
jmacoretta@srkw-law.com

Attorneys for Plaintiffs

Michael P. Cooney (P39405)
Benjamin W. Jeffers (P57161)
Attorneys for Defendant
Dykema Gossett PLLC
400 Renaissance Center
Detroit, MI 48243
(313) 568-5340
bjeffers@dykema.com
mcooney@dykema.com

---

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS'
AMENDED COMPLAINT BASED ON LACK OF JURISDICTION AND FAILURE
TO STATE A CLAIM**

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... ii

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ....................................... 1

II.  THE BANKRUPTCY OF OLD GM ..................................................................... 3

III. PLAINTIFFS' ALLEGATIONS AND CLAIMS ................................................... 5

    A. The Original Complaint and New GM's initial Motion to Dismiss ................................ 5

    B. The Amended Complaint ........................................................................ 6

        1. Plaintiffs' theory is unchanged from the initial Complaint. ..................... 6

        2. Plaintiffs' Warranty Claim ................................................................ 8

IV. ARGUMENT ...................................................................................... 10

    A. The Court should dismiss the case because Plaintiffs' attempt to enlarge New
       GM's liability is a direct violation of the Bankruptcy Court's Sale Approval Order
       and the Bankruptcy Court has exclusive jurisdiction to resolve the parties' dispute ..... 10

        1. Plaintiffs' claims violate the terms of the Sale Approval Order. ................ 11

        2. Dismissal of this case is appropriate given the Bankruptcy Court's
          exclusive jurisdiction to resolve any questions regarding the scope of New
          GM's assumed liabilities. ................................................................ 13

    B. Additionally, Plaintiffs have failed to state a claim against New GM under the
       terms of the express written Warranty. ............................................... 15

V.  CONCLUSION ................................................................................... 20

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Abraham v. Volkswagen of America*, *Inc.*,
    795 F.2d 238 (2d Cir.1986)................................................................................12, 16

*American Suzuki Motors Corp. v. Superior Court,*
    37 Cal. App. 4th 1291, 44 Cal. Rptr. 526 (1995).................................................18

*Bailey v. Monaco Coach Corp.*,
    350 F. Supp. 2d 1036 (N.D. Ga. 2004) ...........................................................17, 18

*Briehl v. General Motors Corp.,*
    172 F.3d 623 (8th Cir. 1999) ...............................................................................18

*Carlson v. General Motors Corp.,*
    883 F.2d 287 (4th Cir. 1989) ................................................................................18

*Cipollone v. Liggett Group, Inc.*,
    505 U.S. 504 (1992)...............................................................................................16

*Commercial Money Center, Inc. v. Illinois Union Ins. Co.*,
    508 F.3d 327 (6th Cir. 2007) ..................................................................................8

*Feinstein v. Firestone Tire & Rubber Co.,*
    535 F.Supp. 595 (S.D.N.Y. 1982).........................................................................18

*Gregory v. Dillard's Inc.,*
    565 F.3d 464 (8th Cir. 2009) ................................................................................11

*Gustafson v. Bridgestone/Firestone, Inc.,*
    537 U.S. 1105 (2003).............................................................................................18

*In re Bridgestone/Firestone, Inc.,*
    288 F.3d 1012 (7th Cir. 2002) ..............................................................................18

*In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.,*
    153 F.Supp.2d 935 (S.D. Ind. 2001).....................................................................19

*In re Crysen/Montenay Energy Co.*,
    902 F.2d 1098 (2d Cir. 1990)................................................................................14

*In re Eidison,*
    6 B.R. 613 (Bankr. N.D. Ga. 1980) ......................................................................14

*In re Equivest St. Thomas, Inc.*,
    No. 07-30011 (JFK), 2008 WL 3108941 (D. V.I. August 4, 2008) ......................14

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

*In re General Motors Corp.*,
    407 B.R. 463 (Bankr., S.D.N.Y. 2009) ...................................................................3

*In re McGhan*,
    288 F.3d 1172 (9th Cir. 2002) ...........................................................................14

*In re Nakash*,
    190 B.R. 763 (Bankr. S.D.N.Y. 1996) ................................................................14

*In Re: OnStar Contract Litig.*,
    Case No. 2:07-MDL-01867, Opinion & Order Granting in Part and Denying
    In Part Plaintiffs' Motion For Leave To File AThird Amended Complaint...........1, 13, 15, 16

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994).............................................................................................10

*Lacey v. Maricopa County*,
    Nos. 09-15703, 09-15806, ___ F.3d __, 2011 WL 2276198 (9th Cir., June 9, 2011).............11

*Langley v. Prudential Mortgage Capital Co., LLC*,
    546 F.3d 365 (6th Cir. 2008) .........................................................................11, 15

*Lee v. General Motors Corp.*,
    950 F.Supp. 170 (S.D. Miss., 1996).....................................................................18

*Lombard Corp. v. Quality Aluminum Products Co.*,
    261 F.2d 336 (6th Cir. 1958) ...............................................................................17

*Mendoza v. General Motors, LLC*,
    2010 WL 5224136 (C.D.Cal. Dec. 15, 2010) .......................................................11

*Moeller v. Danek Medical, Inc.*,
    1997 WL 1039333 (W.D. Pa. 1997) .....................................................................16

*NLFC, Inc. v. Devcom Mid-America, Inc.*,
    45 F.3d 231 (7th Cir. 1995) .................................................................................10

*O'Neil v. Simplicity, Inc.*,
    574 F.3d 501 (8th Cir. 2009) ...........................................................................17, 18

*Rosci v. Acromed, Inc.*,
    447 Pa.Super. 403, 669 A.2d 959 (1995).............................................................16

*Security Watch, Inc. v. Sentinel Systems, Inc.*,
    176 F.3d 369 (6th Cir. 1999) ...............................................................................15

*Tietsworth v. Harley Davidson, Inc.*,
    270 Wis.2d 146, 677 N.W.2d 233 (Wis. 2004) ...................................................18

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

*Travelers Indemnity Co. v. Bailey,*
   129 S.Ct. 2195 (March 20, 2009) ........................................................................14

*Woolums v. National RV,*
   530 F. Supp. 2d 691 (M.D. Pa. 2008) ..........................................................16, 18

*Ziegelmann v. DaimlerChrysler Corp.,*
   649 N.W.2d 556 (ND 2002) ...........................................................................18

## RULES

Fed. R. Civ. P. 12(b) ..............................................................................................10, 15

Fed. R. Civ. P. 12(b)(1).................................................................................................10

Fed. R. Civ. P. 12(b)(6).................................................................................................16

Fed. R. Civ. P. 23.........................................................................................................12

## STATUTES

28 U.S.C. § 1404(a) .....................................................................................................15

28 U.S.C. § 1412...........................................................................................................11

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

I.      INTRODUCTION AND SUMMARY OF ARGUMENT

This putative class action implicates the scope of Defendant General Motors Company's ("New GM") warranty obligations for an alleged design defect in 2007 and 2008 Chevrolet Impalas.[1]  New GM did not design, assemble, or sell these vehicles.  New GM stands by the written warranties it assumed in connection with the sale of Motors Liquidation Company f/k/a General Motors Corporation's ("Old GM") assets in the 2009 bankruptcy.  If one of the pre-transaction vehicles were to manifest a defect in materials or workmanship that is covered by the written warranty, and its owner presented the vehicle to a New GM dealer within the warranty period, then the owner would receive repairs or replacement parts.  New GM and its dealers have been honoring this commitment every day since July 10, 2009 and will continue to do so.

However, Plaintiffs' lawsuit does not ask New GM to honor the specific written warranties it assumed, but instead pursues relief outside the scope of those warranties and expressly excluded by those warranties.  Specifically, Plaintiffs allege that a design defect in their Impalas' rear wheel spindle rods led to increased wear and tear on their vehicles' tires and, based on Old GM's conduct, contend that New GM is obligated to replace all spindle rods in all 2007 and 2008 Impalas, regardless of whether the putative class members experienced any problems or presented their vehicles for repairs within their own warranty's duration.  As set forth in greater detail below, the claims asserted are simply not within the scope of assumed liabilities.  *See also In Re: OnStar Contract Litig.*, Case No. 2:07-MDL-01867, Opinion & Order Granting in Part and Denying In Part Plaintiffs' Motion For Leave To File A Third Amended

---

[1] Although beyond the scope of this motion, Plaintiff has named the wrong party.  The entity which acquired assets from Old GM and simultaneously assumed certain responsibilities of Old GM is General Motors LLC f/k/a General Motors Company.  The entity currently known as General Motors Company is the ultimate parent of General Motors LLC, but was formed later as part of a subsequent corporate reorganization.  For the purposes of this motion, in accepting the allegations of the Complaint as true, New GM has disregarded this distinction.

1

Complaint ("OnStar Opinion")(holding that certain claims purporting to be liabilities assumed by New GM were not), a copy of which is annexed hereto as Ex. A.

Plaintiffs' Amended Complaint did not fix the jurisdictional and pleadings deficiencies of the initial Complaint, and should be dismissed. Plaintiffs' attempt in this Court to sue New GM for Old GM's liabilities violates the exclusive jurisdiction of the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") reserved in the Sale Approval Order.[2] Pursuant to the Sale Approval Order and the agreements it incorporates, New GM's warranty obligations for vehicles sold by Old GM are "subject to conditions and limitations contained in [Old GM's] express written warranties" Sale Approval Order, ¶56 The warranty requires New GM to repair a defect in "materials and workmanship" if such a defect manifested itself and if the vehicle was presented to a New GM dealer within the time and mileage limitations of the warranty. Under the Amended and Restates Master Sale and Purchase Agreement ("ARMSPA"), which is expressly incorporated in the Sale Approval Order, Old GM expressly retained liabilities arising from "allegation, statement or writing by or attributable to [Old GM]." ARMSPA, §2.3(b)(xvi)(B).

Thus, New GM did not assume responsibility for claims based on Old GM's design choices, conduct, or alleged breaches of liability under the warranty, and its terms expressly preclude money damages. Indeed, in ARMSPA §2.3(b)(xi), it was unambiguously stated that New GM would not assume liability for "Liabilities to third parties for Claims based upon Contract, tort or any other basis." But in any event, the Bankruptcy Court retained exclusive

---

[2] The "Sale Approval Order" is the Order (i) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (ii) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases In Connection with the Sale; and (iii) Granting Related Relief, entered on July 5, 2009, a copy of which is annexed hereto as Ex. B.

2

DYKEMA GOSSETT• A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

jurisdiction over any dispute regarding the scope of New GM's limited obligations assumed pursuant to the Sale Approval Order.  Plaintiffs' attempt to plead a claim against New GM in this Court on a successor liability theory is, therefore, a direct violation of the terms of the Sale Approval Order (including both its substantive and jurisdictional elements).

Alternatively, assuming *arguendo* that Plaintiffs alleged only that <u>New GM</u> (not Old GM) failed its assumed obligations under the terms and conditions of Old GM's express warranty (an assumption that requires the Court to disregard much of the Complaint, including the prayer for monetary damages), they nonetheless fail to state claims.  They have not alleged that they presented their vehicles to New GM or a New GM dealer for covered warranty repairs within the duration of the applicable bumper-to-bumper coverage period.  In either case, the Court should dismiss the Amended Complaint.

## II.    THE BANKRUPTCY OF OLD GM

On June 1, 2009, Old GM commenced a voluntary case in the Bankruptcy Court.  On July 10, 2009, New GM acquired substantially all of the assets of Old GM in a transaction executed under the jurisdiction and pursuant to approval of the Bankruptcy Court.  *See generally In re General Motors Corp*., 407 B.R. 463 (Bankr., S.D.N.Y. 2009) ("Sale Opinion") (approving sale transaction).

In acquiring these assets, New GM did <u>not</u> assume the liabilities of Old GM.  Rather, the scope and limitations of New GM's responsibilities are defined in the Sale Approval Order, which is a final binding order and not subject to appeal.  *See* Sale Approval Order, *see also*, *OnStar Opinion*, p. 3.

The ARMSPA, approved and incorporated in the Sale Approval Order, expressly cut off successor and derivative liability claims against New GM based on Old GM's acts or omissions. This clear finding of no successor liability is typical of bankruptcy asset sale orders and allows

3

the debtor's estate (here, Old GM) to benefit by having buyers (New GM) pay an enhanced premium price for the debtor's assets. The Sale Approval Order provides that, with the exceptions of certain liabilities expressly assumed under the relevant agreements, the assets acquired by New GM were transferred "free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever. . . including rights or claims based on any successor or transferee liability. . ." *Id.*, ¶7. Moreover, the Sale Approval Order permanently enjoined claimants from attempting to enforce liabilities against New GM *other than Assumed Liabilities*, as follows:

> "[A]ll persons and entities … holding liens, claims and encumbrances, and other interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability, against [Old GM] or the Purchased Assets (whether legal or equitable, secured or unsecured, **matured or unmatured**, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to [Old GM], the Purchased Assets, the operation of the Purchased Assets prior to the Closing … are forever barred, estopped, and permanently enjoined … from asserting against [New GM] … such persons' or entities' liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability."

Sale Approval Order, ¶ 8 (emphasis added). Even more specifically, paragraph 46 of the Sale Approval Order provides as follows (emphasis added):

> "Except for the Assumed Liabilities expressly set forth in the [ARMSPA] … *[New GM] … shall [not] have any liability for any claim that arose prior to the Closing Date, relates to the production of vehicles prior to the Closing Date, or otherwise is assertable against [Old GM] … prior to the Closing Date …. Without limiting the foregoing, [New GM] shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, but not limited to, under any theory of successor or transferee liability,* de facto merger or continuity … and products … liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated."

*See also* Sale Approval Order, ¶ 47 ("Effective upon the Closing … all persons and entities *are forever prohibited and enjoined from commencing or continuing in any manner any action …*

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

4

against [New GM] … with respect to any (i) claim against [Old GM] other than Assumed Liabilities) (emphasis added).

The Bankruptcy Court retained "**exclusive jurisdiction** to enforce and implement the terms and provisions of [the Sale Approval] Order [and] the [ARMSPA] …, in all respects, including, but not limited to, retaining jurisdiction to … (c) resolve any disputes arising under or related to the [ARMSPA], except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this Order [and] (e) **protect [New GM] against any of the [liabilities that it did not expressly assume under the ARMSPA**] …."  Sale Approval Order., ¶ 71 (emphasis added).

## III.   PLAINTIFFS' ALLEGATIONS AND CLAIMS

### A.   The Original Complaint and New GM's initial Motion to Dismiss

On June 29, 2011, Ms. Trusky filed this case seeking economic damages based on an alleged design defect in her Chevrolet Impala, purportedly based on Old GM's express warranties.  She alleged in her original Complaint that all "model year 2007 and 2008 Impalas were sold with common defective rear spindle rods that caused and continue to cause wheel misalignment and premature tire wear." Complaint, ¶2, dkt #1.  These claims were largely premised on a service campaign relating to police vehicles implemented by Old GM. Id., ¶¶ 2-3, 26-29.  Referring to Old and New GM interchangeably throughout the Complaint, her theory was premised on the alleged "liabilities" of Old GM (*id*., ¶1); indeed, she did not allege that she had any interaction with New GM at all.

New GM filed a Motion to Dismiss on August 11, 2011 (dkt #13), explaining that Ms. Trusky's claims and requested relief were unambiguously outside the scope of the relevant express warranty terms, premised on conduct of Old GM and therefore constituted a violation of the Sale Order.  New GM also explained that even if the Court ignored the effort in the

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

Complaint to enlarge New GM's obligations, Ms. Trusky's individual claim failed because she had not alleged that New GM breached the applicable warranty.  *See* New GM's initial Motion to Dismiss, pp. 14-17, dkt #13.

**B.     The Amended Complaint**

Plaintiffs filed the Amended Complaint on September 16, 2011.  *See* dkt #15.  It is now clear that New GM's  arguments were not mooted.  Plaintiffs changed very little in the Amended Complaint and, if anything, they accentuate the problems by adding new plaintiffs who seek relief despite the fact that their applicable warranty has expired and they presented their vehicles for repair of the defect alleged, if at all, only after the warranty had expired.  *See* Decl. Oakley, Ex. C.

1.     Plaintiffs' theory is unchanged from the initial Complaint.

The claims asserted in this case remain premised on an alleged design defect in the rear spindle rods in the 2007 and 2008 Chevrolet Impalas.  The Amended Complaint proffers the same counts of Breach of Warranty and Injunctive Relief, and once again asks the Court to award damages and to order New GM to provide Plaintiffs and every other purchaser for "repair and/or replacement of the defective rear wheel spindle rod."  Amended Complaint, ¶69.  They seek this expansive relief even though it is not provided for in the warranties and regardless of whether a given vehicle owner has ever manifested a defect or presented their vehicle for repair to a New GM dealer under that warranty.

Plaintiffs continue to rely on a successor liability theory.  They again assert that "New GM assumed the express warranty **liabilities** of Old GM . . ." Amended Complaint, ¶1 (emphasis added).  This assertion is wrong, or at least so imprecise as to be an irrelevant statement for current purposes.  New GM's assumed "warranty liabilities" were limited to certain defined obligations set by specific terms and conditions that do not encompass the claim asserted by

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·400 RENAISSANCE CENTER·DETROIT, MICHIGAN 48243

6

Plaintiffs here.  New GM did not assume responsibility for Old GM's conduct or design choices.  New GM did not assume liability for purported damage claims.  New GM agreed only to provide warranty repairs on pre-transaction vehicles "subject to the terms and conditions" contained in the express warranties as written.  *See* Sale Approval Order, ¶56.

Many other paragraphs in the Amended Complaint further demonstrate that Plaintiffs rely on alleged conduct of Old GM to establish their claims against New GM.  In paragraph 29 they allege that "Defendant New GM, or its predecessor in interest," sold model year 2007 and 2008 Chevrolet Impalas." Amended Complaint, ¶29; *see also*, *id*., at ¶¶42, 54.  Yet New GM did not exist until late Summer of 2009 and did not sell Plaintiffs their vehicles. Plaintiffs' imprecision continues in paragraphs 34 and 35 where Ms. Trusky alleges that she informed "New GM and/or its predecessor's dealer of the defect" long before New GM was created.

But perhaps the best example of Plaintiffs' continued effort to advance a liability theory premised on Old GM's conduct is their reliance on a Program Bulletin concerning Impala police vehicles issued by Old GM.  They allege that in 2008, Old GM issued bulletins to dealers advising them to replace the spindle rods in 2007 and 2008 Impalas equipped with the police package.  Amended Complaint, ¶30.  They claim that the bulletins acknowledge a problem with the spindle rods and that it was improper to have replaced them only on police vehicles because there is no functional difference between those vehicles and all other Impalas. *Id*. at ¶33.  Even accepting their characterization of the bulletins as true, the problem is that Plaintiffs use Old GM's conduct to support their claim for relief against New GM.  Once again mixing Old with New, Plaintiffs allege that the "fact that New GM moved to fix certain Impalas shows that it knew of the defect," knowing full well that this statement depends upon the legally insupportable proposition that New GM and Old GM are the same.  Amended Complaint, ¶3.

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·400 RENAISSANCE CENTER·DETROIT, MICHIGAN 48243

2.      Plaintiffs' Warranty Claim

Plaintiffs again assert a claim for "Breach of Express Warranty." *See* Count I.  Their claim purports to be based on the written warranty that they and each member of the putative class received at the time of purchase. Complaint, ¶33.  Attached as Ex. D is copy of the 2008 Chevrolet Warranty ("Warranty") that Plaintiffs received.[3]  There are a number of important features to this Warranty.  *First*, the Warranty is limited in duration. *Id*., p. 2.  (the "Bumper-to-Bumper" coverage is for the first 3 years or 36,000 miles, whichever comes first).  Tire defects and repairs are within the 3 year/36,000 mile coverage. *Id*.  Spindle rods are part of the suspension, which would be covered only under the 3 year/36,000 mile coverage and not within the longer "powertrain" coverage period. *Id*.  *Second*, the Warranty covers defects in materials and workmanship, not design. *Id*., p. 4.  *Third*, an owner must present their vehicle to a New GM dealer in order to trigger New GM's warranty obligations. *Id*., p. 4 ("To obtain warranty repairs, take the vehicle to a Chevrolet dealer facility within the warranty period and request the needed repairs"); *see also id.*, p. 22 ("You are responsible for presenting your vehicle to a GM dealer selling your vehicle line as soon as a problem exists").  *Fourth*, New GM's obligations are limited to repair and replacement under the Warranty.  The document expressly disclaims claims for damages like those that Plaintiffs seek in this case. *Id*., p. 9.

Plaintiffs contend that New GM breached the Warranty by concealing the alleged defect (only possible if they are talking about a latent design defect) and failing to repair the rear spindle rods.  Amended Complaint, ¶¶48-52.  They also present a count for Injunctive and

---

[3] Plaintiffs did not attach the Warranty to their Complaint, but they quote from it and it is obviously integral to their claims so the Court properly may evaluate it on a Motion to Dismiss. *See Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) ("[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment.").

DYKEMA GOSSETT A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

Declaratory Relief, but it is premised on this same express warranty theory. *See* Amended Complaint, Count II. Plaintiffs seek this relief on behalf of themselves and "all persons in the United States who purchased or leased a model year 2007 and 2008 Chevrolet Impala" without reference to whether putative class members can in fact allege the elements of a claim under the Warranty. Amended Complaint, ¶18.

Putting aside the problems with the certification request, Plaintiffs have not even alleged facts supporting a claim against New GM as to themselves. In paragraph 34, Ms. Trusky claims that "[w]ithin the first 6,000 miles driven and within the first year of, [ownership] the tires were unserviceable, as the tread had worn so quickly that they had become questionable to use any further." Amended Complaint, ¶34. At that time she presented her vehicle to the dealer, and received a <u>free</u> set of replacement tires and a <u>free</u> wheel alignment. Amended Complaint, ¶35. She does not allege any damages or out-of-pocket costs as a result of this service visit. This occurred some time in 2008 or early 2009, but certainly before the bankruptcy in June 2009. *Id*. Then, in November 2010, Ms. Trusky alleges she "brought her car in for its annual inspection [there is no allegations that a GM dealer performed that inspection] and was informed that the replacement rear tires were worn and would not pass inspection." *Id*. ¶32. She "paid $287.77 for a set of rear replacement tires," and at that time the "car had 24,240 miles on it." *Id*. There are no specific factual allegations that New GM – as opposed to Old GM – did anything at all in relation to Ms. Trusky's vehicle.

The two new plaintiffs fail to allege facts constituting a breach of their express warranty during the applicable "bumper-to-bumper" warranty period. Ms. Jeffries purchased a <u>used</u> model year 2007 Impala in June of 2009. Amended Complaint,¶37. When she bought it, New GM did not exist and, most significantly, she did not present her vehicle for service until after it

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

9

had more than 36,000 miles on it.[4]  *See* Decl. Oakley, Ex. C.  Similarly, Ms. Cole alleges she bought a new Impala in 2008.  Amended Complaint, ¶40.  The precise date that it was delivered to her and for which her warranty coverage started was June 26, 2008.  *See* Decl. Oakley, Ex. C. Obviously, her 3 year/36,000 mile bumper-to-bumper coverage expired on June 26, 2011.  Thus, Ms. Cole's presentment to a New GM dealer and her purchase of a new tire on July 5, 2011, were done outside of the warranty period.  Amended Complaint, ¶41.

## IV.   ARGUMENT

Dismissal of the case is the only proper outcome.  First, Plaintiffs' claim indisputably seeks to enlarge New GM's liabilities in violation of the Sale Approval Order and, more fundamentally, any dispute about this issue is within the Bankruptcy Court's exclusive jurisdiction.  However, even if the Court disregards the allegations premised on Old GM's conduct and the successor liability theory, and looks instead for any actionable connection between New GM and Plaintiffs' allegations, then the Complaint fails to state a claim under the terms of the written Warranty.  Either way, the case should be dismissed under Rule 12(b).

### A.    The Court should dismiss the case because Plaintiffs' attempt to enlarge New GM's liability is a direct violation of the Bankruptcy Court's Sale Approval Order and the Bankruptcy Court has exclusive jurisdiction to resolve the parties' dispute.

---

[4] Because the threshold argument in this Motion implicates the Court's jurisdiction, this Court may consider matters outside the pleadings.  When presented with a factual attack on jurisdiction, the Court may weigh the relevant evidence to determine whether, by a preponderance of the evidence, it has subject matter jurisdiction. *See NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 232 (7th Cir. 1995); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (opining that the burden rests on the plaintiff to establish subject matter jurisdiction); *Commodity Trend Serv.*, 149 F.3d at 685 (7th Cir. 1998) ("On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the court is not bound to accept the truth of the allegations in the complaint. Rather, the plaintiff has the obligation to establish jurisdiction by competent proof").  As a practical matter, the Oakley Declaration merely provides a few objective facts that could not be disputed.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

It is impossible to reconcile Plaintiffs' claims with the terms of the Sale Approval Order. But the threshold issue is that it is not permissible to litigate this dispute in this Court without infringing on the Bankruptcy Court's exclusive jurisdiction. Therefore, as explained below, the Court should dismiss the case without prejudice.[5] Plaintiffs may re-file it in the Bankruptcy Court if they wish.

1.    Plaintiffs' claims violate the terms of the Sale Approval Order.

The claims asserted in this case are not cognizable under the terms and conditions of the express warranties assumed by New GM. For one, Plaintiffs affirmatively and incorrectly allege that New GM assumed Old GM's "liabilities," (*see* Amended Complaint, ¶1) and then build upon their case from there by pleading that New GM "**or**" Old GM engaged in certain conduct. Their continued reliance on Old GM's alleged conduct and alleged "liability" illustrates that this case remains built on a successor liability theory despite Plaintiffs' removal of allegations from the initial Complaint that overtly equated the two entities.[6]

---

[5] Alternatively, this Court would be empowered to transfer this action to the Bankruptcy Court pursuant to 28 U.S.C. § 1412 (transfer of cases arising in or related to cases under title 11) because it is a "core proceeding" or at minimum, is one "related to" the bankruptcy. *See Mendoza v. General Motors*, *LLC,* 2010 WL 5224136 (C.D.Cal. Dec. 15, 2010) (transferring a lawsuit against New GM to the Bankruptcy Court). But dismissal without prejudice is the appropriate result here because New GM affirmatively seeks dismissal in this Motion and the Court should respond to the particular request before it. *See e.g., Langley v. Prudential Mortgage Capital Co., LLC*, 546 F.3d 365 (6th Cir. 2008) (remanding so that the trial court could consider transfer or dismissal, depending on which motion the defendant chose to file). Dismissal is the proper result in any event. Plaintiffs had notice of the Sale Approval Order, which clearly bars the claim and relief they seek but nevertheless sought to evade Bankruptcy Court jurisdiction. It should be Plaintiffs, not this Court, that make the decision to put this matter on the Bankruptcy Court's docket.

[6] The use of "and/or" pleading is not acceptable in any event. *See Gregory v. Dillard's Inc.*, 565 F.3d 464, 473 n.9 (8th Cir. 2009) (the "'and/or' formulation, it does not connect any particular [party] to any particular allegation."); *Lacey v. Maricopa County, Nos. 09-15703, 09-15806*, ___ F.3d __, 2011 WL 2276198 at *13 (9th Cir., June 9, 2011) (dismissing claims because the use of the "and/or formulations" as "confusing and misleading" and Plaintiffs' use of the term "forced the district court and [the Ninth Circuit] to try to figure out who did what. . . . [S]uch bare assertions do not meet our minimal pleading standards." (emphasis added)).

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

Moreover, adding Ms. Jeffries and Ms. Cole to the case only highlights that the claims asserted are not cognizable under the relevant express warranties. The warranty coverage, if any, for repairs and replacement of spindle rods and tires would be under the 3 year/36,000 mile bumper-to-bumper warranty. Tires and spindles rods are not part of the "powertrain" coverage, which has a longer duration. But, both Ms. Cole and Ms. Jeffries allegedly presented their vehicles to New GM dealers for tire repairs *after* their "bumper-to-bumper" coverage ran. *See* Decl. Oakley, Ex. C. Thus, for either to recover, the Court would need to enlarge the scope of New GM's assumed warranty liabilities. *See Abraham v. Volkswagen of America, Inc.*, 795 F.2d 238, 250 (2d Cir.1986) ("an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed").

Indeed, if there were any question about this point, Plaintiffs' request to represent a class of all purchasers (and not only vehicle owners which experienced a failure) resolves any doubt. *See* Amended Complaint, ¶22. A vehicle owner cannot state a claim under the Warranty where an alleged defect did not manifest itself during the Warranty period and the owner did not present the vehicle for repairs to New GM. *See* Section IV(B), *supra*. Certifying a class of "all purchasers" necessarily would mean including class members who never experienced the "tire wear" issue that Plaintiffs identifies or who never presented their vehicles *to New GM* for repairs during their Warranty period.[7]

Consequently, Plaintiffs' Amended Complaint amounts to a direct challenge to the Bankruptcy Court's Sale Approval Order and related opinions under § 363 of the Bankruptcy

---

[7] This case could never be certified as a class action for many other reasons under Rule 23 in any event.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

Code.  New GM is responsible only to continue providing warranty repairs on pre-transaction vehicles "subject to the terms and conditions" contained in the Warranty.  *See* Sale Approval Order, ¶56.  Holding New GM responsible for Old GM's "liabilities" as pled in the Amended Complaint is directly at odds with the Sale Approval Order, which provides that New GM acquired Old GM's assets "free and clear," (¶7), and that except for the limited Assumed Liabilities, New GM shall not have liabilities "for any claim that arose prior the Closing Date, relates to the production of vehicles prior to the Closing Date, or otherwise is assertable against [Old GM] . . . prior to the Closing Date."  Sale Approval Order, ¶47, Ex. B.

This Court addressed a similar effort to expand New GM's warranty liabilities in the *OnStar* litigation.  *See* OnStar Opinion, p. 3.  There, plaintiffs sought leave to add New GM to the lawsuit under an express warranty theory.  Plaintiffs asserted in their proposed amended complaint that New GM was liable to plaintiff *due to* Old GM's breaches of the warranties.  *Id*., p. 3.  The Court denied the Motion in part because the "express warranty claims that Plaintiffs seek to assert against New GM appear to be barred by the plain language of the Bankruptcy Court's Sale Approval Order," and expressly rejected plaintiffs' effort to hold New GM liable for Old GM's alleged breaches of the warranties. *Id*., at p. 6.

2.   <u>Dismissal of this case is appropriate given the Bankruptcy Court's exclusive jurisdiction to resolve any questions regarding the scope of New GM's assumed liabilities.</u>

Just as it is obvious that a dispute exists concerning the scope of New GM's liabilities under the Sale Approval Order, it is equally clear that this Court may not resolve it.  The Sale Approval Order explicitly states the Bankruptcy Court has "exclusive jurisdiction to enforce and implement the terms and provision of [the] Order" ***including to "protect [New GM] against any of the [liabilities that it did not expressly assume under the ARMSPA***]."  *See* Sale Approval Order at ¶71.  Only the Bankruptcy Court is empowered to consider Plaintiff's argument that

13

New GM assumed Old GM's warranty "liabilities." *Id*; *Travelers Indemnity Co. v. Bailey*, 129 S.Ct. 2195, 2205 (March 20, 2009) (A bankruptcy court retains continuing jurisdiction to interpret and enforce its own orders).

This Court need not, and in fact should not, resolve the merits of the parties' respective positions. When there is any question about whether a bankruptcy court has exclusive jurisdiction over a matter that concerns a bankruptcy order or the automatic stay, imposed by the Bankruptcy Code, courts hold that a motion should be made first in the bankruptcy court to resolve the jurisdictional issue. *Cf. In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1104 (2d Cir. 1990) (even though creditor had a good faith belief that the stay did not apply, it still should have "sought the advice of the bankruptcy court as to the applicability of the automatic stay . . ."); *In re Nakash*, 190 B.R. 763, 769 (Bankr. S.D.N.Y. 1996) ("If the Receiver had doubts about the applicability of the stay he should have sought this court's opinion prior to taking unilateral action.") *In re Equivest St. Thomas, Inc.*, No. 07-30011 (JFK), 2008 WL 3108941 (D. V.I. August 4, 2008) ("Although not explicitly stated in any statute, the weight of authority suggests that motions for relief from an automatic stay should be filed in the bankruptcy court in the first instances."). The jurisdictional question here is analogous to seeking relief from the automatic stay, as the bankruptcy court arguably has the exclusive jurisdiction to grant relief from the automatic stay.[8]

---

[8] Having the Bankruptcy Court decide the jurisdictional issue in the first instance also promotes judicial economy because actions taken by courts without jurisdiction over the dispute will be invalid and void, and the Bankruptcy Court is required to protect its exclusive jurisdiction. *See In re McGhan*, 288 F.3d 1172 (9th Cir. 2002) ("A bankruptcy court may not decline to invoke this power in the face of a clearly invalid state court action infringing upon the bankruptcy court's exclusive jurisdiction. The bankruptcy court was required to reopen the proceeding to protect its exclusive jurisdiction over the enforcement of its own orders."); *see also In re Eidison*, 6 B.R. 613, 615 (Bankr. N.D. Ga. 1980) ("Since the property which was the subject matter of the garnishment action was in the exclusive jurisdiction of the Bankruptcy Court, the State Court judgment was void.").

DYKEMA GOSSETT◆A PROFESSIONAL LIMITED LIABILITY COMPANY◆400 RENAISSANCE CENTER◆DETROIT, MICHIGAN 48243

The Court should dismiss the case without prejudice to Plaintiffs' right to re-file in the Bankruptcy Court. If they desire, they can then seek a ruling as to the scope of the Sale Approval Order. *See In Re: OnStar Contract Litig.*, Case No. 2:07-MDL-01867, p. 7, Ex. A ("the Bankruptcy Court has jurisdiction to resolve any disputes as to the liabilities that were assumed by New GM" and holding that "to the extent that Plaintiffs wish to pursue warranty claims against New GM, the forum in which to seek to do so is the bankruptcy court"). The Court's authority to dismiss this case is implicit given the Bankruptcy Court's exclusive jurisdiction, is consistent with the result in *In re Onstar Litigation*, and is supported by the rule that dismissal of a lawsuit is appropriate where a forum selection clause dictates that litigation shall proceed in a different federal court. *See Security Watch, Inc. v. Sentinel Systems, Inc.*, 176 F.3d 369 (6th Cir. 1999). [9]

### B. Additionally, Plaintiffs have failed to state a claim against New GM under the terms of the express written Warranty.

Because there were 2007 and 2008 Impalas with unexpired express Warranties as of July 10, 2009, it would be theoretically possible for individual claims to exist against New GM arising from those Warranties. But, even if the Court disregards Plaintiffs' allegations in violation of the Sale Approval Order, this case would still be subject to dismissal because the individual Plaintiffs have not alleged New GM breached its obligations under their Warranty and

---

[9] In *Security Watch*, the Sixth Circuit affirmed the district court's decision to grant a motion to dismiss under Rule 12(b) due to a forum selection clause in the contract at issue in the case. *See also, Langley v. Prudential Mortgage Capital Co., LLC*, 546 F.3d 365, 369 (6th Cir. 2008) (citing *Security Watch* as support for proposition that a trial court may dismiss an action under Rule 12(b) due to a forum selection clause and remanding to the trial court to permit defendants to move to enforce a forum selection clause either through a motion to dismiss under Rule 12(b)(6) or a motion to transfer under 28 U.S.C. § 1404(a)). The Court should dismiss this case pursuant to Rule 12(b), leaving Plaintiffs to re-file in the appropriate forum if they so choose.

because they seek relief to which they never could recover.  *See In Re: OnStar Contract Litigation*, Opinion & Order January 25, 2011, pp. 6-7 (holding that plaintiff may not assert express warranty claim against new GM premised on Old GM's alleged breach of the same warranty).   In other words, even if the Court disregarded  the issues implicating the Sale Approval Order and the Bankruptcy Court's exclusive jurisdiction, any remaining issues are subject to dismissal under Fed. R. Civ. P. 12(b)(6).

On this point, the Court's analysis should begin and end with (i) the allegations specific to New GM and (ii) the terms of the Warranty.  It is settled law that a party's liability for breach of an express warranty derives from, and is measured by, the terms of the warranty itself.  *See Abraham*, 795 F.2d at 250; *Cipollone v. Liggett Group, Inc*., 505 U.S. 504, 525-26 (1992); *Moeller v. Danek Medical, Inc*., 1997 WL 1039333, *4 (W.D. Pa. 1997) ("An action based upon breach of an express warranty is premised 'solely upon the express affirmation of fact made by the manufacturer' to the intended recipient of the product."), *quoting Rosci v. Acromed, Inc*., 447 Pa.Super. 403, 669 A.2d 959, 969 (1995); *see Woolums v. National RV*, 530 F. Supp. 2d 691, 698-99 (M.D. Pa. 2008) (plaintiff may maintain a breach of warranty claim only to the extent that the warranty imposed an obligation upon defendant).  Obviously, given that New GM agreed only to continue providing warranty repairs on pre-transaction vehicles "subject to the terms and conditions" contained in the warranties issues by Old GM (Sale Approval Order, ¶56), this basic point of law is even more salient here.

The Warranty is a typical limited "repair and replacement" warranty.  To establish a breach, Plaintiffs must at a minimum allege and prove that their vehicles exhibited a defect that was covered (*see* Warranty, p. 2, Ex. D), that they presented it to a New GM dealer for repairs (*id*, p. 4), that New GM did not repair the covered defect as required by the Warranty, and that

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

16

they seek relief permitted by the Warranty. *See id*, p. 9 (excluding claims for damages and confirming that "[p]erformance of repairs and needed adjustments is the exclusive remedy"); *see also*, *Bailey v. Monaco Coach Corp.*, 350 F. Supp. 2d 1036, 1043 (N.D. Ga. 2004) (in an express warranty case, a plaintiff must prove that (a) a covered defect existed, (b) notice of the defect was given within a reasonable time after the defect was or should have been discovered; and (c) the warrantor was unable to repair the defect after a reasonable time or a reasonable number of attempts).

Plaintiffs do not allege all of these elements. ***First***, they do not allege the *facts* proving the existence of a covered "defect." The Warranty only covers defects in "materials and workmanship," (*see* Warranty, p. 4), whereas the theory of this case is that the vehicle contains a *design* flaw in the rear wheel spindles that <u>can</u> in turn lead to premature tire wear and tear. *Lombard Corp. v. Quality Aluminum Products Co.* 261 F.2d 336, 338 (6th Cir. 1958) (holding that a design defect was not covered under an express warranty for defects in materials and workmanship). Although Plaintiffs allege a defect in "materials and workmanship" in conclusory fashion (*see* Amended Complaint, ¶2), the reality is that the allegation is not supported by the facts plead. To the contrary, the thrust of the Amended Complaint is based on the premise that the spindles constitute a latent defect regardless of whether there has been a manifestation in the vehicle. Defects in design are not covered by the Warranty. And, even, where an actionable design defect is alleged, "[i]t is well established that purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own." *O'Neil v. Simplicity, Inc.,* 574 F.3d 501, 503-04

(8th Cir. 2009), quoting *Briehl v. General Motors Corp.,* 172 F.3d 623, 628 (8th Cir. 1999). [10]

**Second**, even if the "defect" was covered, its mere existence is not a breach of the Warranty. *See Bailey v. Monaco Coach Corp.*, 350 F. Supp. 2d 1036, 1044 (N.D. Ga. 2004) ("a [w]arranty itself is not breached simply because a defect occurs"). Rather, Plaintiffs must allege that they gave notice and presented their vehicles to a New GM dealer for repairs within the warranty period. Warranty, 4, Ex. D; *see Woolums v. National RV*, 530 F. Supp. 2d 691, 700 (M.D. Pa. 2008) ("Because these repairs were either successful or never presented to National, they cannot provide grounds for a breach of warranty claim").

Each of their individual claims fails for this reason.

- **Ms. Trusky**:  She contends that (i) she bought her vehicle in February 2008 [obviously from Old GM],  Amended Complaint, ¶34; (ii) "[w]ithin the first year," her tires were worn and she took the vehicle for service to her dealer [to an Old GM dealer], ¶¶34, 35; and (iii) on November 30, 2010, she "brought her car in for its annual inspection" and was informed that the tires were worn and so she paid $289.77 for a set of new tires. *Id.*, ¶36.  But she never alleges that she brought her vehicle to a New GM dealer at any time, including for the November 2010 "inspection."

- **Ms. Jeffries**:  She bought a used vehicle in June 2009 and does not even allege that the vehicle was within the *3 year/36,000 mile bumper-to-bumper coverage* when she bought it, let alone on the date she took her vehicle in for new tires.

---

[10] *See also  In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1014-15, 1017 (7th Cir. 2002)("most states would not entertain the sort of theory that plaintiffs press"), *cert. den sub nom, Gustafson v. Bridgestone/Firestone, Inc.,* 537 U.S. 1105 (2003); *O'Neil v. Simplicity, Inc.,* 574 F.3d 501, 503-04 (8th Cir. 2009); *Carlson v. General Motors Corp*., 883 F.2d 287, 297 (4th Cir. 1989)(no breach of warranty because "so far as these plaintiffs are concerned, GM's [allegedly defective vehicles] have served the traditionally recognized 'purpose' for which automobiles are used");( *Lee v. General Motors Corp.,* 950 F.Supp. 170, 175 (S.D. Miss., 1996)("The only person that would benefit by permitting cases such as this to forward would be the lawyers handling the case. . ."); *Feinstein v. Firestone Tire & Rubber Co.,* 535 F.Supp. 595 (S.D.N.Y. 1982); *American Suzuki Motors Corp. v. Superior Court,* 37 Cal. App. 4th 1291, 1298-99, 44 Cal. Rptr. 526, 531 (1995)(no claim because the "vast majority of the Saurais sold to the putative class 'did what they were supposed to do for as long as they were supposed to do it");*Tietsworth v. Harley Davidson, Inc.,* 270 Wis.2d 146, 160, 677 N.W.2d 233, 240 (Wis. 2004)("an allegation that a product is diminished in value because of an event or circumstance that might—or might no—occur is inherently conjectural"); *Ziegelmann v. DaimlerChrysler Corp.*, 649 N.W.2d 556, 565 (ND 2002)

Alleging that her vehicle was within "durational and mileage limitations" (*see* Amended Complaint, ¶39) is intentionally imprecise in that this statement might be true for the inapplicable "powertrain" coverage, but it is not true for the type of coverage that is relevant. In fact, the relevant warranty coverage on Ms. Jeffries' vehicle had expired prior to her purchase. *See* Decl. Oakley, Ex. C.

- **Ms. Cole**: Her allegations suffer from the same flaw as Ms. Jeffries'. Ms. Cole bought a new vehicle in 2008 and does not (and cannot) allege that she presented her vehicle to a New GM dealer for repair within three years. Her imprecise allegations about warranty coverage likewise are an effort to obscure the fact that she too did not present her vehicle until after her bumper-to-bumper coverage ran out.

**Finally**, Plaintiffs seeks relief that they may not get under the Warranty. They request compensatory damages, attorneys' fees, exemplary damages, injunctive and declaratory relief. *See* Amended Complaint and prayer for relief on pages 24-25. None of this is recoverable by them, let alone by any putative class members. New GM only agreed to adhere to the terms of the Warranty, which expressly disclaims such relief:

> Performance of repairs and needed adjustments is the exclusive remedy under this written warranty or any implied warranty. GM shall not be liable for incidental or consequential damages, such as, but not limited to, lost wage or vehicle rental expenses, resulting from breach of this written warranty or any implied warranty.

*See* 2008 Chevrolet Limited Warranty, p. 9, Ex. D.[11] Plaintiffs cannot reconcile their prayer for relief with the actual terms of the Warranty that form the basis for the request in the first place.

In sum, even conducting a filtered analysis of the Amended Complaint reveals a complete disconnect between (i) Plaintiffs and what they want; and (ii) New GM and its responsibilities

---

[11] Plaintiffs could never obtain declaratory "relief" in the form of a court-ordered recall in any event. Their request that New GM replace the spindle rods on every 2007 and 2008 vehicle is pre-empted by the National Traffic and Motor Vehicle Safety Act ("Act"). The Act gives NHTSA exclusive jurisdiction to order safety notifications and recall campaigns. *See In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 153 F.Supp.2d 935, 945 (S.D. Ind. 2001). Moreover, there is nothing in the Warranty that supports a claim for such relief.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

assumed pursuant to the Sale Approval Order.  The allegations in the Amended Complaint fail to state a plausible theory of relief and the Court should therefore dismiss the Amended Complaint on these grounds as well.

**V.     CONCLUSION**

Like the version before it, Plaintiffs' Amended Complaint presents the Court with two options.   The Court may either dismiss the Amended Complaint without prejudice on the grounds that Plaintiffs' liability theory implicates the scope of New GM's liabilities and the Bankruptcy Court has exclusive jurisdiction to resolve that issue, or the Court may evaluate only those allegations that relate to New GM and dismiss the case on the merits given Plaintiffs' obvious failure to state a claim.

DYKEMA GOSSETT PLLC

By: s/ Benjamin W. Jeffers
    Benjamin W. Jeffers (P57161)
    Michael P. Cooney (P39405)
    Attorneys for Defendant
    Dykema Gossett PLLC
    400 Renaissance Center
    Detroit, MI 48243
    (313) 568-5340
    bjeffers@dykema.com
    mcooney@dykema.com

Dated:  September 27, 2011

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record in this matter.

DYKEMA GOSSETT PLLC

By: /s/ Benjamin W. Jeffers
    Benjamin W. Jeffers (P57161)
    Michael P. Cooney (P39405)
    Attorneys for Defendant
    Dykema Gossett PLLC
    400 Renaissance Center
    Detroit, MI 48243
    (313) 568-5340
    bjeffers@dykema.com
    mcooney@dykema.com

Dated:  September 27, 2011

DET01\958803.1
ID\BWJ - 019956/0999

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243